IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 3DT Holdings LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. _____ |
| | ) |
| Bard Access Systems Inc., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff 3DT Holdings, LLC ("3DT"), for its Complaint against Defendant Bard Access Systems Inc. ("Bard") alleges as follows.

## PARTIES

1. 3DT is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 11107 Roselle St., Suite 213, San Diego, California.

2. Upon information and belief, Bard is a corporation organized under the laws of the state of Utah with its principal place of business located at 605 North 5600 West, Salt Lake City, Utah, 84116.

## JURISDICTION AND VENUE

3. Jurisdiction is proper in this district pursuant to 28 U.S.C. §§ 1331, 1332(a), and 2201. Additionally, the amount in controversy exceeds $75,000, excluding interest and costs.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) (3).

## BACKGROUND FACTS AND ALLEGATIONS COMMON TO ALL COUNTS

5. 3DT is a company engaged in the business of researching, designing, developing, validating, testing, manufacturing and commercializing devices and therapies in the treatment of human disease conditions, including specifically cardiovascular and obesity related disorders.

6. 3DT developed an impedance-based profiling method to navigate, track, and/or confirm tip location of peripherally inserted central catheters and/or other central venous catheters (the "Precisive Navigation Technology").

7. 3DT sought to partner with a medical device manufacturer to help it obtain regulatory compliance, commercialize and promote the Precisive Navigation Technology.

8. This Precisive Navigation Technology was sought after by a number of medical device manufacturers, including Bard.

9. 3DT considered numerous factors in determining which medical device manufacturer to partner with to commercialize the Precisive Navigation Technology, including which manufacturer would best be able to quickly and efficiently bring the Precisive Navigation Technology to market.

10. 3DT chose to partner with Bard based on Bard's representations to 3DT that it had the ability, capacity, and intention to utilize, incorporate and/or employ the Precisive Navigation Technology in one or more products (the "Products") and to bring the Products to market quickly and efficiently.

11. Accordingly, on August 29, 2013 (the "Effective Date"), Bard and 3DT entered into an Asset Purchase Agreement (the "APA"), a true and accurate copy of which is

attached as Exhibit A, and a Design, Development, and Services Agreement, a true and accurate copy of which is attached as Exhibit B (the "Development Agreement"), which set forth the parties' rights, duties and obligations surrounding Bard's purchase of the Precisive Navigation Technology from 3DT and its obligation to devote significant time and resources to commercializing the Precisive Navigation Technology, developing the Products, and obtaining FDA approval for such Products.

12. The APA provided for a Purchase Price to be paid by Bard to 3DT for the Precisive Navigation Technology which included a lump sum payment at the Closing as well as an additional milestone payment.

13. Pursuant to Section 2.04 of the APA, Bard was required to pay to 3DT the sum of $5,000,000 ("Full Milestone Payment") upon the receipt by Bard of its FDA clearance to market and sell the Products incorporating the Precisive Navigation Technology. Pursuant to Section 2.04, Bard is obligated to support the development of the Precisive Navigation Technology as and to the extent contemplated by the Development Agreement.

14. Pursuant to Section 2.1 of the Development Agreement, Bard is obligated to provide good faith, commercially reasonable support for commercialization of the Products incorporating the Precisive Navigation Technology (including necessary personnel and finances) for a minimum of three (3) years from the Effective Date to August 29, 2016.

15. Pursuant to Section 2.04 (b), if Bard elected not to continue to support the development of the Precisive Navigation Technology prior to August 29, 2016, Bard was required to (a) provide at least thirty (30) days prior written notice to 3DT ("Notice of Discontinued Support") and (b) pay to 3DT the $5,000,000.00 Full Milestone Payment.

16. After August 29, 2016, Bard was entitled to stop its support of the

Precisive Navigation Technology and the Products without payment of the Full Milestone Payment to 3DT if it determined in good faith and based upon reasonable business judgment that the exploitation of a Bard Product incorporating the Precisive Navigation Technology is no longer commercially practicable due to *inter alia* the creation, development and/or commercial availability of superior technology

17. Initially, 3DT received occasional requests for assistance with the project from Bard.

18. Based on Bard's requests to 3DT, 3DT believed that Bard was working to advance the Precisive Navigation Technology, commercialize the Products, and obtain FDA approval for the Products.

19. Prior to August 29, 2016, Bard stopped requesting assistance from 3DT and provided no information regarding its efforts to advance the Precisive Navigation Technology, commercialize the Products, and obtain FDA approval for the Products.

20. Upon information and belief, and based on 3DT's involvement with other technologies, Bard should have been engaging in significant activity and seeking additional information from 3DT from August 29, 2013 through August 29, 2016 in order to meet its obligation to support the program at commercially reasonable levels.

21. Upon information and belief, Bard stopped supporting the development of the Precisive Navigation Technology and the Products prior to August 29, 2016.

22. However, upon information and belief, Bard did not provide Notice of Discontinued Support and simply stopped communicating with 3DT in order to avoid payment of the Full Milestone Payment.

23. For the first time, in or about December 2016, and only upon inquiry from

3DT about the status of the Products and FDA approval, Bard advised 3DT that it stopped development of the Precisive Navigation Technology, alleging the creation, development and/or commercial availability of superior technology.

24. At no time from the inception of the APA and the Development Agreement to the present did Bard claim that it was forced to stop development of the Precisive Navigation Technology due to technology failure, clinical failure, ineligibility of 510k or obsolescence.

25. Despite request for information necessary to ascertain the basis for Bard's assertion regarding the alleged superior technology and specific information regarding what efforts it took to advance the Precisive Navigation Technology, commercialize the Products, and obtain FDA approval for the Products prior to August 29, 2016, Bard failed and refused to provide specific information.

26. Upon information and belief, Bard failed to provide the requested information because it had stopped supporting the development of the Precisive Navigation Technology and Products long before August 29, 2016, in violation of the APA and the Development Agreement and without payment to 3DT of the Full Milestone Payment.

27. Bard's failure to continue its development and commercialization efforts of the Precisive Navigation Technology and Products prior to August 29, 2016 without payment of the Full Milestone Payment or providing Notice of Discontinued Support is a breach of its duties and obligations to 3DT.

28. Additionally, Bard's failure to provide the information requested by 3DT related to Bard's contention regarding the availability of superior technology subsequent to August 29, 2016 demonstrates Bard's bad faith and is a breach of its duties and obligations to

3DT.

## COUNT I
## BREACH OF CONTRACT

29. 3DT repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

30. 3DT and Bard entered into the APA and Development Agreement which govern the parties' duties and obligations to each other in connection with the Precisive Navigation Technology.

31. Section 2.04(b) of the APA and Section 2.1 of the Development Agreement required Bard to provide personnel, financial and other support and resources to commercialize the Precisive Navigation Technology, develop the Products, and obtain FDA approval for such Products for a minimum of three years, to at least August 29, 2016.

32. Bard failed to fulfill its obligations under Section 2.04(b) of the APA and Section 21 of the Development Agreement.

33. Bard failed to provide a Notice of Discontinued Support and failed to pay to 3DT the Full Milestone Payment despite its failure to provide such support.

34. 3DT has fully complied with the APA and Development Agreement and has not breached the Agreement.

35. Bard has breached the APA and Development Agreement by the acts outlined above and as otherwise will be revealed during discovery in this action.

36. As a result of Bard's breaches, 3DT has been damaged and will continue to be damaged.

## COUNT II

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

37. 3DT repeats and realleges each and every allegation of the foreoing paragraphs as if fully set forth herein.

38. The APA and the Development Agreement between the parties contained implied covenants of good faith and fair dealing pursuant to which each of the parties would deal with one another fairly and in good faith and would do nothing to destroy or injure either's rights to receive the benefits of their contracts.

39. Bard has acted arbitrarily, irrationally, with bad motives or intentions and in breach of its duty of good faith and fair dealing in performance of its contractual obligations under the Agreement by failing to keep 3DT informed about its actions to support and develop the Precisive Navigation Technology and the Products, or its actions to obtain FDA approval for the Products prior to August 29, 2016.

40. Bard has acted arbitrarily, irrationally, with bad motives or intentions and in breach of its duty of good faith and fair dealing in performance of its contractual obligations under the Agreement by failing and refusing to provide to 3DT the information necessary to ascertain the validity of Bard's assertion that it has allegedly identified a technology that is superior to the Precisive Navigation Technology.

41. Bard's conduct has denied and continues to deny 3DT the bargain initially intended by the parties.

42. Accordingly, Bard's conduct is a breach of its implied covenants of good faith and fair dealing on which 3DT relied and which has resulted in damage to 3DT.

WHEREFORE, Plaintiff 3DT Holdings LLC respectfully requests that this Court enter judgment in favor of it and against the Defendant Bard Access Systems Inc. in the sum of at least Five Million Dollars ($5,000,000), with interest thereon from August 29, 2016, for the costs and disbursements of this action, and for such other and further relief as to this Court may seem just and proper.

        NORRIS McLAUGHLIN & MARCUS, P.A.

/s/ Deanna L. Koestel
Deanna L. Koestel, Esq.
NY Attorney ID No. DK9307
875 Third Avenue, 8th Floor
New York, NY 10022
Telephone: (212) 808-0700
Fax: (212) 808-0844
*Attorneys for Plaintiff, 3DT Holdings LLC*