**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| 3DT HOLDINGS LLC,<br>Plaintiff,<br><br>v.<br><br>BARD ACCESS SYSTEMS, INC.,<br>Defendant. | Civil Action No. 1-17-CV-5463-LJL-GWG<br><br>**DEFENDANT BARD ACCESS SYSTEMS, INC.'S RESPONSE TO PLAINTIFF 3DT HOLDINGS LLC'S STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1** |

Pursuant to Rule 56.1 of the Local Rules of the Southern and Eastern Districts of New York, Defendant Bard Access Systems, Inc. ("Bard") responds to Plaintiff 3DT Holdings LLC's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (ECF No. 82-1 (under seal)) submitted in support of its Motion for Summary Judgment, reproduced below:

**<u>Bard Staffing and Personnel Resources</u>**

1. Zach Davis was a new hire for Bard and was not devoted solely to the Penske project. (Gibson Dec. Ex. 2, Misener Dep. Tr. 81:14-24.)

**Response 1**: **<u>Undisputed</u>** that Zach Davis was a new hire for Bard and that he worked on the Penske project, among others. Otherwise **<u>disputed</u>** to the extent that the statement mischaracterizes the record by omitting contextual information. First, the record reflects that "[i]n 2013 [his and Brian Cieselwicz's] primary objective would have been Penske" and "they would have been used as necessary for other efforts as well." (Gibson Dec. Ex. 2, Misener Dep. Tr. 81:21-24.) Second, also **<u>disputed</u>** to the extent the statement suggests that this staffing practice was unusual at Bard. Anthony Misener testified that on his team, "Typically everyone works on at least two projects, if not more." (Gibson Dec. Ex. 2, Misener Dep. Tr. 17:21-24.)

2. Brian Cieselwicz was a new hire for Bard and was not devoted to the Penske project. (Gibson Dec. Ex. 2, Misener Dep. Tr. 81: 14-24.)

**Response 2**: **<u>Undisputed</u>** that Brian Cieselwicz was a new hire for Bard. Otherwise **<u>disputed</u>** to the extent that the statement mischaracterizes the record by omitting contextual information. First,

the record reflects that "[i]n 2013 [his and Zach Davis's] primary objective would have been Penske" and "they would have been used as necessary for other efforts as well." (Gibson Dec. Ex. 2, Misener Dep. Tr. 81:21-24.) Second, also **disputed** to the extent the statement suggests that this staffing practice was unusual at Bard. Anthony Misener testified that on his team, "Typically everyone works on at least two projects, if not more." (Gibson Dec. Ex. 2, Misener Dep. Tr. 17:21-24.)

3. Typically, research and development employees of Bard are assigned to work on at least two projects, if not more. (Gibson Dec. Ex. 2, Misener Dep. Tr. p. 17:21-24.)

**Response 3**: **Undisputed.**

4. Anthony Misener felt [redacted] (Gibson Dec. Ex. 2, Misener Dep. Tr. pp. 82:1-84:21.)

**Response 4**: **Undisputed** that Mr. Misener testified that [redacted] (Gibson Dec. Ex. 2, Misener Dep. Tr. 82:4-5); [redacted] (*id*. at 83:21-25). Moreover, Misener stated that the two new hires, Davis and Cieselwicz, were beneficial: "But it was beneficial to have the two additional heads to bring into the project effort." (*Id*. at 82:5-7.)

**Bard's Concept Development Phase**

5. Bard's [redacted] (Gibson Dec. Ex. 3, Zentgraf Dep. Tr. 54:6-16.)

**Response 5**: **Undisputed** that Bard's [redacted] but otherwise **disputed** to the extent that the statement mischaracterizes the record by omitting facts that indicate [redacted] Anthony Misener testified that, [redacted] (Mantell 3/26 Decl. Ex. C, Misener Dep. Tr. 157:13-19.) When asked [redacted] Anthony Misener responded, [redacted] (Mantell 3/26

Decl. Ex. C, Misener Dep. Tr. 157:20-25; Declaration of Natalie H. Mantell, Esq. in Support of Bard's Opposition to 3DT's Motion for Summary Judgment (hereinafter "Mantell 4/16/2021 Decl."), Ex. A, Misener Dep. Tr. 158:1-4.)

6. [redacted] (Gibson Dec. Ex. 3, Zentgraf Dep. Tr. 59:4-14.)

**Response 6**: **__Disputed.__** The statement mischaracterizes testimony and is contradicted by information in the record. The cited testimony indicates that Mr. Zentgraf [redacted] Q. Okay. So you would expect that if [redacted] MS. PATTERSON: Objection. THE WITNESS: Speaking about my specific things, if -- [redacted]" (Gibson Dec. Ex. 3, Zentgraf Dep. Tr. 59:4-14.) Further, Mr. Zentgraf's other testimony [redacted] (Mantell 4/16/2021 Decl., Ex. D, Zentgraf Dep. Tr. 58:3-11) and when asked [redacted] (Gibson Dec. Ex. 3, Zentgraf Dep. Tr. 59:4-14.) In addition, the statement is **__not material__** to the Court's interpretation of the Agreements at issue.

7. [redacted]. (Gibson Dec. Ex. 2, Misener Dep. Tr. 156:3-12.)

**Response 7**: **__Disputed.__** The statement is a broad generalization not supported by cited testimony. The cited testimony states that [redacted] which Anthony Misener believed happened in the Penske project. (Gibson Dec. Ex. 2, Misener Dep. Tr. 156:3-12.) In addition, the statement is **__not material__** to the Court's interpretation of the Agreements at issue.

8. Dr. Ghassan Kassab testified that [redacted] (Gibson Dec. Ex. 1, Kassab Dep. Tr. 111:9-22.)

**Response 8**: **Disputed.** First, this testimony is merely Dr. Kassab's characterization of a conversation he purportedly had with Mr. Misener. Second, as to the [redacted] the record does not reflect that Dr. Kassab was describing what Mr. Misener actually stated during the call, but instead expressed his own conclusion regarding such issues: [redacted] (Gibson Dec. Ex. 1, Kassab Dep. Tr. 111:9-22 (emphasis added).) In addition, the statement is **not material** to the Court's interpretation of the Agreements at issue.

9. [redacted] (Gibson Dec. Ex. 4, January 2015 Penske Integration Meeting Minutes.)

**Response 9**: **Undisputed.**

10. By September 4, 2015, Phillips felt [redacted] (Gibson Dec. Ex. 5, Phillips Dep. Tr. pp. 90:10-91:4, Phillips Dep. Ex.'s 11, 13.) With respect to [redacted], the only item needed was [redacted] (Gibson Dec. Ex. 5, Phillips Dep. Tr. pp. 90:10-93:14.)

**Response 10**: As for the statements in the first sentence, **undisputed** that September 4, 2015, Phillips felt as though [redacted] but otherwise **disputed** that [redacted] as a mischaracterization of testimony. Mr. Phillips stated he [redacted] around September 10, 2015 "but [redacted]" (Mantell 3/26 Decl. Ex. B, Phillips Dep. Tr. 97:19-21). As for the statement in second sentence, **disputed** as a mischaracterization of the record omitting information and inaccurately portraying [redacted] As reflected in a September 4, 2015 email, Mr. Phillips stated that "[redacted]" (*Id.* at Phillips Dep. Tr. 90:10-17 (emphasis added).) As of September 4, 2015, Chris Phillips testified that "[redacted]



ME1 36191182v.3

[redacted]" (*Id.* at Phillips Dep. Tr. 90:22-91:8.)

In addition, this statement is **disputed** to the extent it mischaracterizes testimony by using the word [redacted] to suggest that [redacted] Mr. Davis was "[redacted][.]" (Gibson Dec. Ex. 14, Davis Dep. Tr. 18:4-7.) This was not a minor task: "[redacted]" (Mantell 3/26 Decl. Ex. 9, Davis Dep. Tr. 20:22-21:7 (emphasis added).)

11. The [redacted] was held on October 8, 2015. (Gibson Dec. Ex. 6, Penske Animal Study Summary.)

**Response 11**: **Disputed.** October 8, 2015 [redacted]. (Mantell 4/16/2021 Decl., Ex. E, Jan. 12, 2016 email from Misener to team, "[redacted]" BAS-3DT 0043940; Mantell 4/16/2021 Decl., Ex. F, March 3, 2016 Penske Integration Meeting Minutes[1] reporting on [redacted], BAS-3DT 0021207; (Gibson Dec. Ex. 2, Misener Dep. Ex. 6, BAS-3DT 0048079 (Jan. 25, 2016 emails between McGowan to Davis: "[redacted]")). In addition, the statement is **not material** to the Court's interpretation of the Agreements at issue.

12. [redacted]. (Gibson Dec. Ex. 7, December 2015 Penske Integration Meeting Minutes.)

**Response**: **Undisputed.**

[1] The year reflected in the body of the document, "03-03-2015" is a typographical error – these minutes were from a March 2016 meeting, as reflected in the document metadata, file create date 3/3/2016, and in the file name, "2016-03-03_Penske Integration Mtg.docx."

**January 2016 Development Resource Shift**

13. The January 2016 Marking Monthly Report stated that [redacted] due diligence was completed. (Gibson Dec. Ex. 8, Decheek Dep. Ex. 12.)

**Response 13**: **Undisputed.**

14. On January 11, 2016, Misener informed Decheek that Ed Burnside (Bard VP of Research and Development) was "pushing a shift from Penske to Project A" and "[redacted]" (Gibson Dec. Ex. 9, January 11, 2016 Email between Misener and Decheek.)

**Response 14**: **Undisputed** to the extent that the statement accurately reflects language from the January 11, 2016 email at issue, but otherwise **disputed** to the extent the statement mischaracterizes the record by omitting facts and suggesting that spending concerns were unique to Penske. The same email states: "[redacted]" (Gibson Dec. Ex. 9, January 11, 2016 Email between Misener and Decheek.) Further, this statement is **not material** because the governing contractual standard provided [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.) Bard's actions exceeded this standard, particularly where, at Bard, "[redacted]" (Mantell 3/26 Decl. Ex. C, Misener Dep. Tr. 210:6-16) and "[redacted]" (App. Ex. 6, Decheek Dep. Tr. 43:5-9).

15. On January 11, 2016, Luke Tedesco – Senior Financial Analyst – asked Misener whether [redacted] (Gibson Dec. Ex. 10, January 11, 2016 Bard Email.)

**Response 15**: **Undisputed.**

16. Anthony responded that "[a]ssuming [redacted] goes through this will dramatically change the development of Penske (due to resource loading)." Ed Burnside then responded that Misener should "[g]o ahead and load with the assumption that [redacted] goes through and we slow development but continue Penske." (Gibson Dec. Ex. 10, January 11, 2016 Bard Email.)

**Response 16**: **Undisputed** that the email reflects that Bard planned to "continue Penske." (Gibson Dec. Ex. 10, January 11, 2016 Bard Email.) However, the statement regarding slowing development of Penske is **not material** because the governing contractual standard provided [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.) Bard's actions exceeded this standard, particularly where, at Bard, "[redacted]" (Mantell 3/26 Decl. Ex. C, Misener Dep. Tr. 210:6-16) and "[redacted]" (App. Ex. 6, Decheek Dep. Tr. 43:5-9).

17. According to Anthony Misener, resources were being diverted from Penske to [redacted], thereby causing the significant delay he was reporting to the Bard Management Board in January 2016. (Gibson Dec. Ex. 2, Misener Dep. Tr. p. 238:8-16.)

**Response 17**: **Undisputed.** However, the statement regarding resource diversion from Penske to Ambergris and delay is **not material** because the governing contractual standard provided [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.) Bard's actions exceeded this standard, particularly where, at Bard, "[redacted]" (Mantell 3/26 Decl. Ex. C, Misener Dep. Tr. 210:6-16) and "[redacted]" (App. Ex. 6, Decheek Dep. Tr. 43:5-9).

18. [redacted] (Gibson Dec. Ex. 11, January 25, 2016 Project Status Report.)

**Response 18**: **Undisputed** that the [redacted], but **disputed** to the extent the statement mischaracterizes the record by omitting information indicating that [redacted] Anthony Misener explained that "[redacted]" (Joint SUMF at ¶ 26, App. Ex. 5, Misener Dep. Tr. 89:22-24.) During his deposition, when asked if he recalled [redacted], Anthony Misener stated, "[redacted]

[redacted]" (*Id*. at Misener Dep. Tr. 90:2-6.)

19. [redacted] (Gibson Dec. Ex. 8, Decheek Dep. Ex.'s 12, 13; Gibson Dec. Ex. 12, March 2016 Marketing Monthly Report.)

**Response 19**: **Undisputed** that [redacted] but otherwise **disputed** to the extent that the statement mischaracterizes the record by omitting information that explains the meaning of the document. Decheek testified that [redacted] (Gibson Dec. Ex. 8, Decheek Dep. Ex. 12) [redacted] (Gibson Dec. Ex. 8, Decheek Dep. Ex. 13; Gibson Dec. Ex. 12) [redacted] (Mantell 4/16/2021 Decl., Ex. C, Decheek Dep. Tr. at 67:1-8.) The statement regarding a shift in the "majority of resources" to Ambergris is **not material** because the governing contractual standard provided [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.) Bard's actions exceeded this standard, particularly where, at Bard, "[redacted]" (Mantell 3/26 Decl. Ex. C, Misener Dep. Tr. 210:6-16) and "[redacted]" (App. Ex. 6, Decheek Dep. Tr. 43:5-9).

20. On January 25, 2016, Davis reported to a third-party vendor engaged by Bard to work on a portion of Penske that [redacted] (Gibson Dec. Ex. 2, Misener Dep. Ex. 5.)

**Response 20**: **Undisputed** that the statement describes the contents of the email, but otherwise **disputed** because the statement mischaracterizes the record by omitting information that explains the meaning of the document. This email is from [redacted] (App. Ex. 5, Misener Dep. Tr. 241:17-20.) [redacted] is in business development, "responsible for making sure his employees have work to do . . . [and] seeking out new opportunities and maintaining the business relationships." (Mantell 4/16/2021 Decl., Ex. B, Davis

Dep. Tr. 53:19-25.) Zach Davis clarified that "[redacted] very persistent about getting work. And I just kind of wanted to ask him to back off a little bit. [redacted]. But at that point, we had everything that we needed from him to develop the -- or test out the tech." (Mantell 4/16/2021 Decl., Ex. B, Davis Dep. Tr. 15:9-18.) Further, this statement is **not material** because the governing contractual standard provided [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.) Accordingly, Bard exercised its discretion in accord with the contract in determining Poliac's assistance was not needed at that time.

21. On February 9, 2016, Randi Cleverly asked Misener via email [redacted] (Gibson Dec. Ex. 13, February 9, 2016 Email between Misener and Cleverly.)

**Response 21**: **Undisputed** that the statement reflects the contents of the email, particularly that [redacted] (Gibson Dec. Ex. 13, February 9, 2016 Email between Misener and Cleverly.) However, the statement regarding [redacted] is **not material** because the governing contractual standard provided [redacted]. (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.) Bard's actions exceeded this standard, particularly where, [redacted] (Mantell 3/26 Decl. Ex. C, Misener Dep. Tr. 210:6-16) and [redacted] (App. Ex. 6, Decheek Dep. Tr. 43:5-9).

22. On February 16, 2016, Davis reported to a third-party vendor that [redacted] (Gibson Dec. Ex. 2, Misener Dep. Tr. p. 234:1-235:9, Misener Dep. Ex. 4.)

**Response 22**: **<u>Undisputed</u>** that the statement describes the contents of the email, but otherwise **<u>disputed</u>** because the statement mischaracterizes the record by omitting information that provides context. When asked why Zach Davis would say that, Anthony Misener testified, [redacted] (Mantell 4/16/2021 Decl., Ex. A, Misener Dep. Tr. 237:15-20.) Also, the statement regarding [redacted]

[redacted] is **not material** because the governing contractual standard provided [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.) Accordingly, Bard [redacted]

23. On February 17, 2016, Davis reported to a third-party vendor that [redacted] (Gibson Dec. Ex. 2, Misener Dep. Ex. 6.)

**Response 23**: **Undisputed** that the statement describes the contents of the email, but otherwise **disputed** because the statement mischaracterizes the record by omitting information that explains the meaning of the document. The remaining portion of the email reads: [redacted] (Gibson Dec. Ex. 2, Misener Dep. Ex. 6, BAS-3DT 0048077 (emphasis added)), which reflects [redacted] Further, Anthony Misener explained that he believed the email referred to t[redacted] (Mantell 4/16/2021 Decl., Ex. A, Misener Dep. Tr. 248:11:18.) Also, the statement regarding [redacted] is **not material** because the governing contractual standard provided [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.) Accordingly, Bard [redacted]

24. On February 19, 2016, Misener continued to report on the slowdown in Penske development because [redacted] was consuming the Penske R&D resources. (Gibson Dec. Ex. 2, Misener Dep. Tr. 216:17-21, Misener Dep. Ex. 1.)

**Response 24**: **Disputed.** The statement mischaracterizes testimony and contradicts information in the record. First, the email from Mr. Misener to other team members states [redacted] (Mantell 4/16/2021 Decl., Ex. G, Misener Dep. Ex. 1.) Thus, the email reflects that Mr. Misener was [redacted] Second, the cited testimony does not reflect that "[redacted] was consuming the Penske R&D resources." On the contrary, Mr. Misener testified that he [redacted] (Gibson Dec. Ex. 2, Misener Dep. Tr. 216:17-21) not that [redacted] was consuming Penske R&D resources wholesale. Also, the

statement regarding any [redacted] is **not material** because the governing contractual standard provided [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.) Bard's actions exceeded this standard, particularly where, [redacted] (Mantell 3/26 Decl. Ex. C, Misener Dep. Tr. 210:6-16) and [redacted] (App. Ex. 6, Decheek Dep. Tr. 43:5-9).

25. On February 19, 2016, Davis reported to a third-party vendor that [redacted] (Gibson Dec. Ex. 14, Davis Dep. Tr. pp. 63 :3-14, Davis Dep. Ex. 2.)

**Response 25**: **Undisputed** that the statement describes the contents of the email, but otherwise **disputed** because the statement mischaracterizes the record by omitting information that explains the meaning of the document, and that Mr. Davis was attempting to discourage [redacted] from reaching out for work. This email is from Zach Davis to [redacted] who is described in Response 20. When asked why Davis [redacted] (Gibson Dec. Ex. 14, Davis Dep. Tr. 63:9-23.) Also, the statement is **not material** because the governing contractual standard provided [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.) Accordingly, Bard [redacted]

26. On March 8, 2016, Zentgraf sent an email to Vickie Tino of Ametek Engineer Medical Components that provides "an update on activities associated with Project Penske [redacted] (Gibson Dec. Ex. 15, March 8, 2016 Email between Zentgraf and Tino.)

**Response 26**: **Undisputed.**

27. The March 8, 2016 email further states [redacted] (Gibson Dec. Ex. 15 March 8, 2016 Email between Zentgraf and Tino.)

**Response 27**: **Undisputed** that the statement reflects the contents of the email, particularly that [redacted] reflecting an intent to [redacted] However, the statement is **not material** because the governing contractual standard provided [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.)

28. During an April 1, 2016 teleconference, it was reported that [redacted]. (Gibson Dec. Ex. 8, Decheek Dep. Tr. pp. 72:20-73:11, Decheek Dep. Ex. 15.) According to Decheek, the [redacted] (Gibson Dec. Ex. 8, Decheek Dep. Tr. pp. 86:7-10, 88:25-89:5, Decheek Dep. Ex. 19.)

**Response 28**: **Undisputed** that during an April 1, 2016 teleconference, it was reported that [redacted] but the balance of the statement **<u>disputed.</u>** The statement mischaracterizes the record by omitting Decheek's explanation that immediately follows discussion [redacted] Decheek stated that he believed [redacted] (Gibson Dec. Ex. 8, Decheek Dep. Tr. 73:21-25; Mantell 4/16/2021 Decl., Ex. C, Decheek Dep. Tr. 74:1-3.) In addition, other citations do not include discussions of Exhibit 15 at all. When asked [redacted]

[redacted] Decheek did answer in the affirmative (Mantell 4/16/2021 Decl., Ex. C, Decheek Dep. Tr. 88:25-89:5); however, this testimony is unconnected to the specific [redacted] Also, the statement is **not material** because the governing contractual standard provided [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.)

29. [redacted] (Gibson Dec. Ex. 16, April 2016 Marketing Monthly Report.)

**Response 29**: **Undisputed** that the statement reflects the contents of the April 2016 Marketing Monthly Report, but otherwise **disputed** because the statement mischaracterizes the record by omitting information that explains the meaning of the document. Tony Decheek stated if there is [redacted] (Mantell 4/16/2021 Decl., Ex. C, Decheek Dep. Tr. 79:2-6 (emphasis added).) When asked if it also means [redacted] Decheek said, [redacted] (Mantell 4/16/2021 Decl., Ex. C, Decheek Dep. Tr. 79:8-12.) Also, the statement is **not material** because the governing contractual standard provided [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.)

30. [redacted] (Gibson Dec. Ex. 17, May 2016 Marketing Monthly Report.)

**Response 30**: **Undisputed** that the statement reflects the contents of the May 2016 Marketing Monthly Report, but otherwise **disputed** because the statement mischaracterizes the record by omitting information that explains the meaning of the document. When asked why [redacted] Tony Decheek answered, "[redacted]'" (Mantell 4/16/2021 Decl., Ex. C, Decheek Dep. Tr. 78:12-79:1.) Also, the statement is **not material** because the governing contractual standard provided [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.)

31. On June 8, 2016, Decheek stated that [redacted] (Gibson Dec. Ex. 8, Decheek Dep. Ex. 18.)

**Response 31**: **Undisputed** that on June 8, 2016, Decheek stated that [redacted] however, otherwise **disputed** because the statement mischaracterizes the record by omitting information that explains the meaning of the document. According to Tony Decheek, "[redacted]" (Mantell 4/16/2021 Decl., Ex. C, Decheek Dep. Tr. 80:14-17.) When asked if [redacted], Tony Decheek said "[redacted] (Mantell 4/16/2021 Decl., Ex. C, Decheek Dep. Tr. 80:18-24.) Also, the statement is **not material** because the governing contractual standard provided [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.) Bard's actions exceeded this standard, particularly where, at Bard, "[redacted]" (Mantell 3/26 Decl. Ex. C, Misener Dep. Tr. 210:6-16) and "[redacted]" (App. Ex. 6, Decheek Dep. Tr. 43:5-9).

32. On June 30, 2016, Misener reported to Luke Tedesco that [redacted] (Gibson Dec. Ex. 18, June to August Email Communications between Misener and Tedesco.)

**Response 32**: **Undisputed** that the statement reflects the contents of Misener's June 30, 2016 email, particularly the statement that "[redacted]" because it reflects intent to continue work on the project in the future. However, the statement is **not material** because the governing contractual standard provided [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.) Bard's actions exceeded this standard, particularly where, at Bard, "[redacted]" (Mantell 3/26 Decl. Ex. C, Misener Dep. Tr. 210:6-16) and "[redacted]" (App. Ex. 6, Decheek Dep. Tr. 43:5-9).

33. [redacted]

(Gibson Dec. Ex. 8, Decheek Dep. Ex. 20.)

**Response 33**: **Undisputed** that [redacted], but otherwise **disputed** because the statement mischaracterizes the record by omitting information that explains the meaning of the document. When asked why [redacted], Tony Decheek answered, "[redacted]" (Mantell 4/16/2021 Decl., Ex. C, Decheek Dep. Tr. 78:12-79:1.) Similarly, Decheek noted that [redacted] (Mantell 4/16/2021 Decl., Ex. C, Decheek Dep. Tr. 90:12-91:4.) Also, the statement is **not material** because the governing contractual standard provided [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.) Bard's actions exceeded this standard, particularly where, [redacted] (Mantell 3/26 Decl. Ex. C, Misener Dep. Tr. 210:6-16) and "[redacted] (App. Ex. 6, Decheek Dep. Tr. 43:5-9).

34. On August 23, 2016, Misener reported that [redacted]

(Gibson Dec. Ex. 18 June to August Email Communications between Misener and Tedesco.)

**Response 34**: **Undisputed** that the statement reflects the contents of this email, but otherwise **disputed** to the extent it mischaracterizes the record by omitting facts that indicate neither the [redacted] Anthony Misener testified that, "[redacted]" (Mantell 3/26 Decl. Ex. C, Misener Dep. Tr. 157:13-19.) When asked "[redacted]", Anthony Misener responded, "[redacted]" (Mantell 3/26 Decl. Ex. C, Misener Dep. Tr. 157:20-25; Mantell 4/16/2021 Decl., Ex. A, Misener Dep. Tr. 158:1-4.)

35. On July 25, 2016, William Roeca circulated an updated priority list of Bard projects and [redacted] (Gibson Dec. Ex. 19, July 25, 2016 Roeca Email.)

**Response 35**: **Disputed.** The statement mischaracterizes the record because the email cited here does not indicate whether [redacted] (Gibson Dec. Ex. 19, July 25, 2016 Roeca Email.) In addition, the Excel attachment to this email,

[redacted] (Mantell 4/16/2021 Decl., Ex. H, "Priority List_Updated 7-13-2016.xlsx" (produced in native).) Also, the statement is **not material** because the governing contractual standard provided [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.) Bard's actions exceeded this standard, particularly where, [redacted] (Mantell 3/26 Decl. Ex. C, Misener Dep. Tr. 210:6-16) and [redacted] (App. Ex. 6, Decheek Dep. Tr. 43:5-9).

36. On July 27, 2016, Poliac – a third-party vendor that worked on the Penske development – sent an email to Misener to "[redacted]." Misener responded and stated that "[redacted]" (Gibson Dec. Ex. 20, July 27, 2016 Poliac Engineer Resources Email.)

**Response 36**: **Undisputed** that the statement reflects the contents of the July 27, 2016 email, but otherwise **disputed** because the statement mischaracterizes the record by omitting information that explains the meaning of the document. As discussed in Responses 20 and 25, this is another email from [redacted] who handles business development, and [redacted] As Zach Davis noted, [redacted] reaches out to the team on a consistent basis: "[redacted]" (Mantell 4/16/2021 Decl., Ex. B, Davis Dep. Tr. 13:23-14:5.) Accordingly, Bard [redacted]

37. [redacted] (Gibson Dec. Ex. 21, August 2016 Marketing Monthly Report.)

**Response 37**: **Undisputed** that [redacted] of the August 2016 Marketing Monthly Report, but otherwise **disputed** because the statement mischaracterizes the record by omitting information that explains the meaning of the document, as discussed in Responses 29, 30, and 33. When asked [redacted] Tony Decheek answered, "[redacted]



ME1 36191182v.3

[redacted]"" (Mantell 4/16/2021 Decl., Ex. C, Decheek Dep. Tr. 78:12-79:1.) Similarly, Decheek noted that he could not tell [redacted] (Mantell 4/16/2021 Decl., Ex. C, Decheek Dep. Tr. 90:12-91:4.)

38. On August 31, 2016, Paul Morgan requested that Anthony Decheek [redacted] Anthony Decheek responded by stating "[redacted]" Morgan responded that [redacted] Decheek responded that [redacted] (Gibson Dec. Ex. 8, Decheek Dep. Ex. 21.)

**Response 38**: **__Undisputed__** that the email in question contains that language, but otherwise **__disputed__** because the statement mischaracterizes the record by omitting information that explains the meaning of the document. In a September 1, 2016 email, Tony Decheek noted, "[redacted]" (Gibson Dec. Ex. 8, Decheek Dep. Ex. 21.) He testified that when he wrote, "[redacted]" (Mantell 4/16/2021 Decl., Ex. C, Decheek Dep. Tr. 95:1-9.) Also, the statement is **not material** because the governing contractual standard [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.) Bard's actions exceeded this standard, particularly where, [redacted] (Mantell 3/26 Decl. Ex. C, Misener Dep. Tr. 210:6-16) and [redacted] (App. Ex. 6, Decheek Dep. Tr. 43:5-9).

39. On November 14, 2016, Luke Tedesco asked Anthony Decheek whether [redacted] Anthony Decheek responded by stating: "[redacted]" Anthony Decheek then

[redacted]. (Gibson Dec. Ex. 8, Decheek Dep. Ex. 23.)

**Response 39**: **Undisputed** that the email in question contains that language, but otherwise **disputed** because the statement mischaracterizes the record by omitting information that explains the meaning of the document. Tony Decheek testified that "[redacted]." (Mantell 4/16/2021 Decl., Ex. C, Decheek Dep. Tr. 100:23-101:2.) Further, he stated "[redacted]" (Mantell 4/16/2021 Decl., Ex. C, Decheek Dep. Tr. 101:12-14.) Also, the statement is **not material** because the governing contractual standard provided [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.) Bard's actions exceeded this standard, particularly where, [redacted] (Mantell 3/26 Decl. Ex. C, Misener Dep. Tr. 210:6-16) [redacted] (App. Ex. 6, Decheek Dep. Tr. 43:5-9).

**Bard's 2016 Development Activity**

40. From September 10, 2015 to January 25, 2016 and beyond, Chris Phillips had "[redacted]" (Gibson Dec. Ex. 5, Phillips Dep. Tr. 101:1-8.)

**Response**: **Undisputed.** *See* Joint SUMF ¶ 81.

41. Phillips testified that he [redacted] (Gibson Dec. Ex. 5, Phillips Dep. Tr. 114:5-9.)

**Response 41**: **Disputed.** The statement is an mischaracterizes the cited testimony. (Gibson Dec. Ex. 5, Phillips Dep. Tr. 114:5-9 ("document? A. I need to look at it first. Q. Okay. Go ahead. A. I recognize what it is generally. Okay. Q. So you do recognize this document?").) Also, any statement about time allocated to Penske is **not material** because the governing contractual standard provided [redacted]

[redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.) Bard's actions exceeded this standard, particularly where, [redacted] (Mantell 3/26 Decl. Ex. C, Misener Dep. Tr. 210:6-16) and [redacted] (App. Ex. 6, Decheek Dep. Tr. 43:5-9).

42. [redacted] (Gibson Dec. Ex. 5, Phillips Dep. Tr. pp. 101:14-102:6.)

**Response 42**: **Disputed.** The statement mischaracterizes the cited testimony. Mr. Phillips noted what *did* change during that time: "[redacted]" (Gibson Dec. Ex. 5, Phillips Dep. Tr. 101:19-102:1.) When asked [redacted], Mr. Phillips answered, "[redacted]" (Gibson Dec. Ex. 5, Phillips Dep. Tr. 102:3-6 (emphasis added).) And, as mentioned above, from September 10, 2015 to January 25, 2016 and beyond, Chris Phillips had "[redacted]" Phillips does not know a number of meetings, "[redacted]." (Joint SUMF ¶ 81, Gibson Dec. Ex. 5, Phillips Dep. Tr. 101:1-8.)

43. Chris Phillips has [redacted] (Gibson Dec. Ex. 5, Phillips Dep. Tr. 44:14-20.)

**Response 43**: **Disputed.** The statement mischaracterizes the record by omitting information, suggesting that [redacted]. 3DT SUMF ¶ 40; Bard SUMF ¶¶ 23-27 (citing Mantell 3/26 Decl. Ex. B, Phillips Dep. Tr. 91:12-25, 126:21-25, 131:15-19, App. Ex. 7, Phillips Dep. Tr. 51:21-24, 54:15-22, 127:1-12, 128:24-129:11).

44. Between March 1, 2016 and September 1, 2016, Misener [redacted] (Gibson Dec. Ex. 2, Misener Dep. Tr. 273:4-20.)

**Response 44**: **Undisputed** that Mr. Misener [redacted] **Disputed** because the statement mischaracterizes Mr. Misener's testimony, which provided a rough estimate and was far from certain: "[redacted] -- Q. (BY MR. MCNALLY) Sure. However you feel more comfortable in answering. A. In that regard, [redacted]

[redacted]" (Gibson Dec. Ex. 2, Misener Dep. Tr. 273:13-20.) Also, the statement is **not material** because the governing contractual standard provided [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.) Bard's actions exceeded this standard, particularly where, [redacted] (Mantell 3/26 Decl. Ex. C, Misener Dep. Tr. 210:6-16) and "[redacted]" (App. Ex. 6, Decheek Dep. Tr. 43:5-9).

45. According to Misener, between March 1, 2016 and September 1, 2016, [redacted] (Gibson Dec. Ex. 2, Misener Dep. Tr. 273:22-24.)

**Response 45**: **<u>Undisputed</u>** that [redacted] between March 1, 2016 and September 1, 2016. **<u>Disputed</u>** because the statement is a mischaracterization of testimony, which provided a rough estimate and was far from certain: "[redacted]" (Gibson Dec. Ex. 2, Misener Dep. Tr. 273:22-24.) Further, the cited testimony does not discuss [redacted]; the relevant testimony appears on the next page: "[redacted]" (Mantell 4/16/2021 Decl., Ex. A, Misener Dep. Tr. 274:2-6.) Also, the statement is **not material** because the governing contractual standard provided [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.) Finally, this statement is **<u>inadmissible</u>** for lack of personal knowledge as required by Fed. R. Evid. 602 and in violation of Local Civil Rule 56.1(d), which requires that each statement "must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Accordingly, it should not be considered by the Court.

46. Bard's expert, Gregory Haas, testified that [redacted] (Gibson Dec. Ex. 22, Hass Dep. Tr. 117:12-119:3.)

**Response 46**: **Disputed.** The statement is a mischaracterization of testimony. When asked [redacted]

[redacted] Bard's expert, Mr. Haas, struggled to answer the question posed, because [redacted] (Gibson Dec. Ex. 22, Hass Dep. Tr. 117:24-118:13.)

Further, Mr. Haas testified that he would expect Bard to [redacted] (Gibson Dec. Ex. 22, Hass Dep. Tr. 118:14-20.)

Mr. Haas could not answer the question posed due to the flawed nature of the question: "[redacted]" (Gibson Dec. Ex. 22, Hass Dep. Tr. 118:21-119:6 (emphasis added).)

47. [redacted] (Gibson Dec. Ex. 2, Misener Dep. Tr. 276:24-277:12.)

**Response 47**: **Disputed.** This statement mischaracterizes testimony by using the word "only" to suggest that the work performed was minimal. Mr. Misener testified that [redacted] (App. Ex. 5, Misener Dep. Tr. 276:21-277:12.)

48. Misener testified that [redacted] (Gibson Dec. Ex. 2, Misener Dep. Tr. 277:14-16.)

**Response 48**: **Undisputed**, particularly that Penske development was moving forward. However, the remainder of the statement is **not material** because the governing contractual standard provided [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1.) Bard's actions exceeded this standard, particularly where, [redacted] (Mantell 3/26 Decl. Ex. C, Misener Dep. Tr. 210:6-16) and "[redacted]" (App. Ex. 6, Decheek Dep. Tr. 43:5-9).

49. [redacted] (Gibson Dec. Ex. 14, Davis Dep. Tr. 17:25-20:21.)

**Response 49**: **Undisputed** to the extent that [redacted], but otherwise **disputed** because this statement mischaracterizes testimony by using the word "only" to suggest that the work performed was minimal and inaccurately reflects the work performed. First, [redacted], Mr. Davis was "[redacted]" (Gibson Dec. Ex. 14, Davis Dep. Tr. 18:4-7.) This was not a minor task: "[redacted]." (Gibson Dec. Ex. 14, Davis Dep. Tr. 20:22-25; App. Ex. 9, Davis Dep. Tr. 21:1-7.) Second, Mr. Davis was also "[redacted]" (Gibson Dec. Ex. 14, Davis Dep. Tr. 18:10-13.)

50. In his 2016 Self-Assessment, Zentgraf [redacted]. (Gibson Dec. Ex. 3, Zentgraf Dep. Ex. 3.)

**Response 50**: **Undisputed** that Mr. Zentgraf's 2016 Self-Assessment [redacted], but otherwise **disputed.** This statement mischaracterizes the record by failing to provide contextual information, as Mr. Zentgraf also [redacted]

[redacted] (Mantell 4/16/2021 Decl., Ex. I, Zentgraf Dep. Ex. 3 at BAS-3DT 0053153 (emphasis added).) Mr. Zentgraf testified that "[redacted]." (Gibson Dec. Ex. 3 Zentgraf Dep. Tr. 66:11-12.)

51. [redacted]. (Gibson Dec. Ex. 3, Zentgraf Dep. Tr. 66:5-67:2.)

**Response 51**: **Undisputed** that Mr. Zentgraft was [redacted], but **disputed** to the extent that the statement incorrectly implies [redacted].

**Current Penske Status**

52. Currently, [redacted] (Gibson Dec. Ex. 8, Decheek Dep. Tr. 112:22-113:14.)

**Response 52**: **Disputed.** This statement mischaracterizes cited testimony because [redacted] When asked whether [redacted] he stated "I don't have the list in front of me, so I couldn't tell you but I think it is fair to say [redacted]." (Gibson Dec. Ex. 8 Decheek Dep. Tr. 113:10-14.) In addition, Mr. Decheek was deposed on July 24, 2020, and therefore, his testimony is not indicative of [redacted]. Also, the statement is **not material** because the governing contractual standard [redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1) and the three-year anniversary of the Development Agreement occurred on August 29, 2016. Bard's actions exceeded this standard, particularly where, [redacted] (Mantell 3/26 Decl. Ex. C, Misener Dep. Tr. 210:6-16) and [redacted] (App. Ex. 6, Decheek Dep. Tr. 43:5-9).

53. On December 7, 2016, [redacted] (Gibson Dec. Ex. 23-1, December 7, 2016 Email with Project Status List, 23-2, Project Status List.)

**Response**: **Undisputed.** Also, the statement is **not material** because the governing contractual standard provided [redacted]

[redacted] (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement Section 2.1) and December 7, 2016 was months after the three-year anniversary.

54. Misener testified that [redacted] (Gibson Dec. Ex. 2, Misener Dep. Tr. 162:14-21.)

**Response 54**: **Undisputed but not material.** Section 2.1 of the Development Agreement provides that "[redacted]" (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement, Section 2.1.) Whether or not [redacted] is irrelevant to Bard's determination of [redacted].

55. Phillips testified that [redacted]. (Gibson Dec. Ex. 5, Phillips Dep. Tr. 106:3-7.)

**Response 55**: **Disputed** as a mischaracterization of Phillips' testimony. Phillips stated he [redacted]. (Gibson Dec. Ex. 5, Phillips Dep. Tr. 106:3-7.) However, **not material.** Section 2.1 of the Development Agreement provides that "[redacted]" (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement, Section 2.1.) Mr. Phillips' belief that [redacted]

56. Decheek testified that [redacted] (Gibson Dec. Ex. 8, Decheek Dep. Tr. 105:3-8)

**Response 56**: **Undisputed but not material.** Section 2.1 of the Development Agreement provides that "[redacted]" (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement, Section 2.1.) That [redacted]

57. Misener informed Bard's retained expert – Gregory Haas – that [redacted] (Gibson Dec. Ex. 22, Haas Dep. Tr. 53:21-54:3.)

**Response 57**: **<u>Undisputed.</u>**

58. Bard's retained expert was asked whether, in his opinion, [redacted]. Mr. Haas, Bard's expert, testified under oath: "[redacted]" (Gibson Dec. Ex. 22, Haas Dep. Tr. 106:11-107:2.)

**Response 58**: **<u>Undisputed.</u>**

59. In Defendant Bard Access Systems, Inc.'s Answers to Plaintiff's Interrogatories, Bard states that "[redacted]

[redacted]" (Gibson Dec. Ex. 24, Bard's Answers to Interrogatories, p. 8 Answer No. 9.)

**Response 59**: **Undisputed**, particularly where, under Section 2.1, [redacted] Section 2.1 of the Development Agreement provides that "[redacted]" (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement, Section 2.1.)

60. Bard further stated in its Answers to Interrogatories that "[redacted]" (Gibson Dec. Ex. 24, Bard's Answers to Interrogatories, pp. 8-9 Answer No. 10.)

**Response 60**: **Undisputed**. [redacted] Section 2.1 of the Development Agreement, which provides that "[redacted]" (Joint SUMF ¶ 14, App. Ex. 2, Development Agreement, Section 2.1.) Nevertheless [redacted].

## ADDITIONAL FACTS

In addition, Bard hereby incorporates each and every factual averment set forth in its Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 that it submitted in connection with its Motion for Summary Judgment (ECF No. 82-1 (under seal)) and the parties' Joint Rule 56.1 Statement of Facts (ECF No. 73 (under seal)) as if set forth fully and completely herein.

**McCARTER & ENGLISH, LLP**

By: */s/ Natalie H. Mantell*
Natalie H. Mantell

Natalie H. Mantell
Meghan McSkimming
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Facsimile: (973) 624-7070
nmantell@mccarter.com
mmcskimming@mccarter.com

*Attorneys for Defendant Bard Access Systems, Inc.*

Dated: April 16, 2021