UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  5/17/2022
```

-------------------------------------------------------------------X
                       :

3DT HOLDINGS LLC,                :

               Plaintiff,      :

                       :          17-cv-5463 (LJL)

        -v-              :

BARD ACCESS SYSTEMS INC.,    :     MEMORANDUM AND

                       :            ORDER

              Defendant.   :

-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Plaintiff 3DT Holdings LLC moves to exclude the trial testimony of witness for the

defendant Bard Access Systems Inc. ("Bard" or "Defendant") Ed Burnside ("Burnside"), whose

name was first mentioned by defendant as a potential witness on March 30, 2022.  Dkt. No. 163.

The motion is denied.

## BACKGROUND

      The bench trial of this case is scheduled for May 23, 2022.  It will proceed with the Court

taking direct testimony by declaration with the declarant being subject to cross-examination and

redirect examination in open court.

      Burnside was Vice President of Research and Development at Bard during the Penske

project.  He was not identified by name in Bard's Rule 26(f) Initial Disclosures.  Dkt. No. 165-1

¶ 1.  The Initial Disclosures listed seven individuals "likely to have discoverable information . . .

that the disclosing party may use to support its claims or defenses" and then added "Any

witness(es) listed in Plaintiff's Initial Disclosures or subsequent witness lists" and "Any

witness(es) needed for rebuttal and/or impeachment or otherwise identified through the

discovery process." *Id.*  Burnside was not listed on the list of custodians whose emails

Defendant was to search. Dkt. No. 165-2.  Plaintiff served an interrogatory asking Defendant to

"[i]dentify all persons having knowledge of facts relevant to the subject matter of this litigation

and [to] describe in detail the extent and nature of their knowledge, including but not limited to,

all persons having control and/or custody of relevant documents to this litigation."  Dkt No. 165-

3 at ECF p. 5.  In response, Defendant "refer[red] counsel to the individuals identified in its

Initial Disclosure as well as those identified in Plaintiff's interrogatories and all other the

discovery [sic] exchanged to date."  *Id.*

Burnside was not identified in Plaintiff's interrogatories.  Plaintiff and Defendant

corresponded regarding whether Plaintiff would accept the retroactive designation of the Rule

30(b)(1) testimony of defense witness Anthony Misener as responsive to Plaintiff's request for

30(b)(6) testimony of a Bard witness on, among other things, Defendant's "determination that

the technology developed by Bard under the code name 'Modus II' is superior to the Precisive

Navigation Technology," "Bard's efforts to develop the Precisive Navigation Technology from

August 2013 through August 2016," and "Bard's efforts to develop the Precisive Navigation

Technology from September 1, 2016 to present."   In correspondence leading up to that decision,

counsel for Plaintiff agreed to accept the designation of Misener's 30(b)(1) testimony as the

30(b)(6) testimony of Defendant on those topics "as long as there is no additional information or

testimony from Bard on those topics beyond Misener's testimony and Bard's other discovery

responses."  Dkt. No. 165-8.  Defendant accepted that offer.  *Id.*  In its response, Defendant

stated that it was "comfortable" designating [Misener's] deposition as the 30(b)(6) testimony [for

the relevant topics] and added "I would also note that Bard's knowledge of these topics is amply

reflected in the thousands of documents produced by [Bard], which are incorporated by reference

in its discovery responses." *Id.*  On March 30, 2022, in connection with planning appearances

for trial, Defendant first disclosed an intent to call Burnside as a witness.  Dkt. No. 165-9 at 4.

Plaintiff argues that Defendant should be precluded from offering Burnside as a witness

because it did not list him in its Initial Disclosures or in the responses to the interrogatories.  Dkt.

No. 164 at 5.  It argues that it would be prejudiced by Defendant offering the testimony because

it does not know whether all of the relevant documents maintained by Burnside were produced

by Bard, it has been denied the opportunity to question other witnesses about his testimony, and

it cannot have its expert (or another expert) consider his testimony.  *Id.*  Defendant responds that

Plaintiff's decision not to take Burnside's testimony was strategic—"Burnside was involved in

this matter at the very outset and Plaintiff has recognized his relevance throughout."  Dkt. No.

166 at 1.  Defendant points out that it has produced no fewer than 792 documents to Plaintiff

referring to or including Burnside and referred to Burnside by name in its summary judgment

motion.  *Id.*  It also argues that Plaintiff will suffer no prejudice because Bard has agreed to make

Burnside available for deposition.  *Id.* at 2.

## DISCUSSION

Federal Rule of Civil Procedure 26(a)(1)(A) requires each party, "without awaiting a

discovery request," to disclose to the other parties "the name and, if known, the address and

telephone number of each individual likely to have discoverable information—along with the

subjects of that information—that the disclosing party may use to support the claims or defenses,

unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A).  The purpose of

the Rule is to  is to avoid "surprise" or "trial by ambush." *Am. Stock Exch., LLC v. Mopex, Inc.*,

215 F.R.D. 87, 93 (S.D.N.Y. 2002) (internal quotation marks omitted) (citing *Transclean Corp.*

*v. Bridgewood Servs., Inc.*, 77 F. Supp. 2d 1045, 1061 (D. Minn. 1999)); *see also Haas v.*

*Delaware & Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008) (summary order) ("'The purpose of the rule is to prevent the practice of "sandbagging" an opposing party with new evidence.'" (quoting *Ebewo v. Martinez,* 309 F. Supp. 2d 600, 607 (S.D.N.Y.2004)). "'Use' includes any use at a pretrial conference, to support a motion, or at trial." Fed. R. Civ. P. 26(a)(1) advisory committee's notes to the 2000 amendment. Moreover, the rule requires disclosure even if the witness is to be used only for purposes of rebuttal; "[t]he disclosure obligation applies to 'claims and defenses,' and therefore requires a party to disclose information it may use to support its denial or rebuttal of the allegations, claim, or defense of another party." *Id.*; *see also* 6 Moore's Federal Practice § 26.22[4][a][iii]. If a party discovers additional persons with discoverable information it intends to use during the process of discovery, the party is required to supplement its initial disclosures and provide that information to the other parties. *See* Fed. R. Civ. P. 26(e)(1); *see also* Fed. R. Civ. P. 26(e)(1) advisory committee's notes to 2000 amendment ("Subdivision (e)(1), which is unchanged, requires supplementation if information later acquired would have been subject to the disclosure requirement. As case preparation continues, a party must supplement its disclosures when it determines that it may use a witness or document that it did not previously intend to use.").

The failure to identify a witness under Rule 26 can result in exclusion of that witness from offering evidence under Rule 37(c)(1). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see* Fed. R. Civ. P. 26(a)(1), advisory committee's note to 2000 amendment ("The obligation to disclose information the party may use connects directly to the exclusion sanction of Rule 37(c)(1)."). "Substantial justification

4

means 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.' 'Failure to comply with the mandate of the Rule is harmless when there is no prejudice to the party entitled to the disclosure.'" *Mopex, Inc.*, 215 F.R.D. at 93 (first quoting *Henrietta D. v. Giuliani*, 2001 WL 1602114, at *5 (E.D.N.Y. Dec. 11, 2001) then quoting *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D. Kan. 1995)).

In deciding whether to exclude a witness from testifying as a sanction for a violation of Rule 26, the court considers the *Sofitel* factors: "'(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.'" *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (quoting *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir.1997)). "Preclusion is considered 'a drastic remedy' that is generally disfavored within the District." *Rosado v. Soriano*, 2021 WL 4192863, at *1 (S.D.N.Y. Aug. 6, 2021) (quoting *Rivera v. United Parcel Serv.*, 325 F.R.D. 542, 548 (S.D.N.Y. 2018)). "Before the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988).

Bard should have disclosed Burnside pursuant to Rule 26(a)(1), and once it decided that it might use him as a witness it was required to supplement its initial disclosures under Rule 26(e)(1). It is not sufficient that Bard included in its Initial Disclosures the omnibus reference to individuals referenced in "subsequent witness lists" and "otherwise identified through the discovery process." Dkt. No. 165-1. Discovery might reveal whether a particular person has

5

discoverable information; it would not reveal that the disclosing party might use that person as a witness.  "It is not sufficient to identify [witnesses] through the use of a collective description, such as 'employees or representatives of the defendant.'"  6 Moore's Federal Practice § 26.22[4][a][i].  "[A] party's mere 'knowledge of the existence of a witness does not satisfy the Rule 26(a)(1)(A) disclosure obligation; that obligation is fulfilled only if [the disclosing party] informed [the opposing party] that it might call the witness.'"  *Lebada v. New York City Dep't of Educ.*, 2016 WL 626059, at *5 (S.D.N.Y. Feb. 8, 2016), *objections overruled*, 2016 WL 8453417 (S.D.N.Y. May 16, 2016) (quoting *Pal v. New York Univ.,* 2008 WL 2627614, at *4 (S.D.N.Y. June 30, 2008) and citing *Fleming v. Verizon New York, Inc.,* 2006 WL 2709766, at *9 (S.D.N.Y. Sept. 22, 2006)). Nor is the violation excused because Bard intends to use Burnside only for rebuttal.  The rule imposes mutual obligations; it applies to claims and defenses alike. The only exception is that it does not apply to witnesses used "solely for impeachment."  Fed. R. Civ. P. 26(a)(1).

While Bard should have disclosed Burnside, the extreme sanction of preclusion is not appropriate here.  The first *Softel* factor tends to favor 3DT, but only slightly.  There is no reason to believe that the failure to list Burnside constituted "'a deliberate attempt … to engage in the "sandbagging" that Rule 26 forbids.'"  *Lebada*, 2016 WL 626059, at *6 (quoting *Agence France Presse v. Morel*, 293 F.R.D. 682, 688 (S.D.N.Y. 2013)).  There is every reason to believe that it constituted an oversight, and one that counsel realized as it was preparing for trial and not before. At the same time, however, Defendant offers no good reason for its failure to recognize it might use Burnside.  Defendant states that Burnside will only testify in rebuttal to the expert testimony of Plaintiff expert Wiley Thomas Waddell, but Waddell's expert report is dated August 31, 2020,

Dkt No. 140-4.[1]  Counsel could not reasonably have relied on its reference to others "identified through the discovery process" to discharge its Rule 26(a)(1) duties.  As noted, the Rule is clear that such references are insufficient.

However, the other *Sofitel* factors all favor Bard.  Burnside's testimony is important to an accurate resolution of this case.  A central factual question in this case is whether Bard complied with the term of the Development Agreement which required it to "provide commercially reasonable personnel, financial and other support (as determined by Bard, in good faith, based upon its reasonable business judgment) with regard to development of a Bard product incorporating Precisive Navigation Technology."  Dkt No. 73-2 § 2.1.  As Vice President of Research and Development, Burnside was the person ultimately responsible for developing the Precisive Navigation Technology and selected the team that would work to develop the technology.  His testimony is necessary to address the critique of Plaintiff's expert Waddell that Defendant's decisions were not commercially reasonable, and cross-examination of him will be important in testing whether Bard complied with the terms of the contract.  *See Outley*, 837 F.2d at 590–91 (discussing importance of witness in determining the proper sanction for a violation of Rule 26(e)); *Rosado,* 2021 WL 4192863, at *2.

Plaintiff also has not articulated any prejudice it would suffer in preparing to meet Burnside's testimony.  As Plaintiff points out in its brief, Burnside's "name appeared in documents produced by Bard," Dkt. No. 164 at 9, and Defendants point to multiple documents that show Burnside was "well-known to 3DT and its counsel during discovery" and that "he was

---

[1] The late disclosure also cannot be justified on the grounds that it was not until May 10, 2022 that the Court ruled on and denied Defendant's *Daubert* motion to exclude Waddell as an expert (subject to the renewal of that motion after he testifies). Dkt. No. 161. Bard disclosed its intent to call Burnside *before* the Court's ruling.

identified throughout the record, including in the testimony, documents, deposition exhibits, and Plaintiff's summary judgment papers," Dkt. No. 166 at 8 (citing, among other things, Plaintiff's counsel's confirmation that Burnside was part of the management board for the Research and Development team and deposition testimony from an individual associated with 3DY indicating that Burnside was part of the committee to which he presented data in the Spring of 2013); *see also Rosado*, 2021 WL 4192863, at *2 (finding no prejudice where the opposing party knew of witness's identity and broad contours of the testimony). Plaintiff argues that it "does not know whether all relevant documents maintained by Burnside relevant to his anticipated trial testimony were produced by Bard" and that it "has been denied the opportunity to question other witnesses about Burnside's testimony and related documents, or to test the veracity of such statements." Dkt. No. 164 at 5; *see also* Dkt. No. 180 at 6, 7. However, in this case, unlike in a jury trial or in a bench trial where direct testimony is not taken by declaration, Plaintiff has a copy of Burnside's direct testimony, and it still has not identified any documents that it does not now have and would have requested had it known that Burnside would be a witness or any questions it would have asked in deposition of another witness that it did not ask. Plaintiff notes that Burnside's declaration does not cite documents for certain of the propositions he asserts, *see* Dkt. No. 180 at 6, but there is no assertion that those propositions—having to do with a change in the application to which Defendant would put Plaintiff's technology and the expenses Defendant incurred in developing those applications—are surprises. They have been central issues throughout this litigation. Moreover, Plaintiff knew of Burnside's involvement in the project and could have asked questions (and did ask questions) about Burnside during discovery. The general assertion that "it is not possible to know how 3DT's litigation strategy—including the impact that Burnside discovery would have on the selection, scope and content of expert

testimony and positions taken on summary judgment—would have differed" is not sufficient to show prejudice.  Dkt. No. 180 at 7.  The same assertion could be made in most cases.

In any event, if any prejudice did exist, it is mitigated by permitting Plaintiff to take Burnside's deposition pretrial, which the Court now orders.  Plaintiff asserts (unconvincingly) that the prejudice to it cannot be averted with a deposition five days before trial, but it does not either seek a continuance or argue it would be prejudicial to take a deposition at this time.  And while the need to take the deposition might "put [3DT] to some inconvenience, in the absence of a more definite showing of prejudice," preclusion is not required.  *Outley*, 837 F.2d at 591.

Finally, Plaintiff argues that Defendant should be precluded from using Burnside because of its election to have Misener—and not Burnside—serve as its 30(b)(6) representative.  But a corporation's obligation under Rule 30(b)(6) is only to designate a representative who can testify "about information known or reasonably available to the organization," Fed. R. Civ. P. 30(b)(6), and not to designate the person at the organization "with the most knowledge" on the subject.  Dkt. No. 180 at 6.  In the correspondence regarding the designation of Misener as such a representative, defense counsel made clear that "Bard's knowledge of these topics is amply reflected in the thousands of documents produced by [Bard], which are incorporated by reference in its discovery responses."  Dkt. No. 165-8.  Plaintiff has not identified any deposition answer of Misener that would have suggested that hr did not have relevant knowledge.

## CONCLUSION

The motion to exclude the witness Ed Burnside is DENIED on the condition that Burnside be made available for deposition on May 18, May 19, or May 20, 2022, as reasonably selected by Plaintiff's counsel.

The Clerk of Court is respectfully directed to close Dkt. No. 163.

SO ORDERED.

Dated: May 17, 2022
       New York, New York

_____
LEWIS J. LIMAN
United States District Judge